Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| LOURDES IRIS PÉREZ CARRIÓN<br><br>Apelado<br><br>V.<br><br>NELSON MORALES SANTANA<br><br>Apelante | TA2026AP00082 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: CE2024CV00119<br><br>Sobre: Liquidación Sociedad de Bienes Gananciales |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

El 22 de enero de 2026, compareció ante este Tribunal de Apelaciones, el señor Nelson Morales Santana (en adelante, señor Morales Santana o parte apelante), por medio de recurso de *Apelación*. Mediante este nos solicita que revisemos la *Sentencia* emitida y notificada el 20 de noviembre de 2025. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Demanda* presentada por la señora Lourdes Iris Pérez Carrión (en adelante, señora Pérez Carrión o parte apelada) y en consecuencia, declaró liquidada y extinta la sociedad de bienes gananciales y su posterior comunidad de bienes postganancial habida entre las partes.

Por los fundamentos que adelante se exponen, se *confirma* la *Sentencia* apelada.

### I

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Demanda* sobre liquidación de sociedad de bienes gananciales, interpuesta por la señora Pérez Carrión en contra de la

parte apelante. De acuerdo con la *Demanda*, las partes estuvieron casadas bajo el régimen de sociedad legal de bienes gananciales hasta su divorcio el 28 de agosto de 2024. La parte apelada alegó que, había realizado gestiones con la parte apelante para el avalúo y liquidación voluntaria de sus bienes, sin lograr llegar a un acuerdo. Según explicó, ya habían dividido cuentas bancarias, vendido una propiedad y cerrado otras cuentas, no obstante, quedaban bienes pendientes de liquidar y adjudicar. De igual forma, expresó que, los bienes que componían la sociedad legal de bienes gananciales consistían de: dos propiedades inmuebles, cuatro vehículos de motor, cuentas de depósito, cuatro tarjetas de crédito, un préstamo de auto, un préstamo de placas solares, una membresía *time share*, muebles, prendas, relojes y joyas. Solicitó al foro primario que liquidara la sociedad legal de gananciales dentro de un término de 90 días.

Luego de varios trámites procesales innecesarios pormenorizar, la parte apelante presentó *Contestaci[ó]n a la Demanda*. Reconoció la existencia de bienes pendientes de liquidar, y que era necesario realizar un inventario de dichos bienes.

Así las cosas, el 10 de abril de 2025, se celebró una *Vista de Seguimiento*, a la que comparecieron las partes representadas por sus representantes legales. De acuerdo con la *Minuta*, la representación legal de la parte apelante indicó que por el momento no realizaría descubrimiento de prueba, aunque se reservó el derecho. El foro primario concedió hasta el 30 de junio de 2025, para concluir el descubrimiento de prueba.

El 1ro de agosto de 2025, las partes presentaron *Informe Preliminar de Conferencia con Antelación al Juicio*.

Por otro lado, el 4 de agosto de 2025, la parte apelante presentó *Moci[ó]n en Solicitud de Extensi[ó]n al Descubrimiento de Prueba y Solicitud de que se Nombre un Contador Partidor*. Mediante

su moción, solicitó un término adicional de 30 días para el descubrimiento de prueba.

El Tribunal de Primera Instancia, mediante *Orden* emitida en igual fecha, dispuso:

> No ha lugar. Durante la vista del 15 de abril de 2025 el tribunal fue claro en que el término del descubrimiento de prueba no ser[í]a extendido. Las partes informaron en dicha vista que no llevarían a cabo descubrimiento de prueba por lo que no puede alegar desconocimiento de testigos o prueba documental.
>
> En este caso no se va a tratar alegaciones sobre vicios de construcción.
>
> La vista continuará siendo la Conferencia con Antelación al Juicio.

El 23 de octubre de 2025, las partes presentaron el *Informe Preliminar de Conferencia con Antelación a Juicio.*

El foro primario celebró el juicio en su fondo los días 28 al 30 de octubre de 2025.

Finalmente, el 20 de noviembre de 2025, el Tribunal de Primera Instancia emitió la *Sentencia* cuya revisión nos atiene. Mediante dicho dictamen, el foro *a quo* esbozó las siguientes determinaciones de hechos:

1. La parte demandante es Lourdes Iris Pérez Carrión.

2. La parte demandada es Nelson Morales Serrano.

3. Las partes se divorciaron el 28 de agosto de 2024 en el Tribunal de Primera Instancia, Sala de Guaynabo.

4. Las partes se casaron bajo el régimen de la sociedad de bienes gananciales, el 29 de septiembre del 1990.

5. La parte demandante reside en la Urbanización Sierra Berdecía Calle Febles H-28, Guaynabo, Puerto Rico 00969.

6. La parte demandada reside en la Calle Amapola #292, Aguas Claras, Ceiba, Puerto Rico 00735.

7. El inmueble donde reside la parte demandante se obtuvo mientras las partes estuvieron casadas.

8. El inmueble donde reside la parte demandada está a nombre del demandado.

9. El inmueble donde reside el demandado localizado en el municipio de Ceiba fue opcionado para compra pendiente el caso de divorcio.

10. El inmueble donde reside el demandado localizado en Ceiba fue opcionado por el demandado con $1,000.00 de una cuenta ganancial.

11. La utilización de los $1,000.00 por el demandado para la opción de compra del inmueble donde reside en Ceiba no fue consultado con la demandante.

12. La propiedad inmueble localizada en la Urbanización Sierra Berdecía es ganancial.

13. La propiedad inmueble localizada en la Urbanización Sierra Berdecía no tiene deuda.

14. La propiedad inmueble localizada en la Urbanización Sierra Berdecía es el bien ganancial inventariado de mayor valor.

15. La parte demandante desea adquirir la participación del demandado en la propiedad inmueble localizada en la Urbanización Sierra Berdecía.

16. El pasado abril del año 2025 la propiedad inmueble localizada en la Urbanización Sierra Berdecía fue tasada.

17. La tasación de abril 2025 fue realizada por el tasador Jimmy Rivera Rubio con número de licencia estatal 1242EPA.

18. El tasador Jimmy Rivera Rubio rindió un informe el 22 de abril de 2025 de tasación de la propiedad inmueble localizada en la Urbanización Sierra Berdecía luego de visitar la propiedad.

19. El tasador cobró por sus servicios $400.00 y el pago fue divido en parte iguales entre las dos partes del caso.

20. El valor del inmueble localizado en la Urbanización Sierra Berdecía es $235,000.00 dólares según la tasación.

21. El valor del inmueble localizado en la Urbanización Sierra Berdecía es un activo.

22. La tasación refleja que la propiedad por sus dos patios laterales, que fueron unas ampliaciones hechas por las partes en violación al Reglamento 6.1.3 al no guardar la distancia de 2 metros de las colindancias.

23. El tasador recomendó a la demandante consultar un ingeniero sobre las dos ampliaciones.

24. Al inmueble se le hicieron dos ampliaciones mientras las partes estuvieron casadas.

25. La construcción de las ampliaciones se realizó sin permisos de construcción.

26. La tasación contiene una certificación por el Ingeniero Ramón Amaury Mota con número de licencia 8863.

27. El ingeniero Ramón Amaury Mota tiene 46 años de experiencia como ingeniero y es un experto en permisología para la legalización de construcciones.

28. El ingeniero Ramón Amaury Mota certifica que el costo por legalizar la construcción en aranceles sería de un total de $9,500.00.

29. El ingeniero Ramón Amaury Mota certifica que el costo por el permiso de demolición de no aprobarse la legalización de la construcción es de $1,000.00.

30. El ingeniero Ramón Amaury Mota certifica que el costo por las labores del contratista debe costar alrededor de los $15,000.00.

31. Durante el juicio, el demandado aceptó otorgar un crédito a la demandante por el costo de la legalización de las ampliaciones.

32. La propiedad inmueble ganancial paga CRIM de $30.57 por semestre.

33. Por los dos semestres la propiedad inmueble ganancial paga un total de $61.14.

34. La parte demandante ha estado pagando el CRIM.

35. La propiedad inmueble ganancial está al día en el pago del CRIM.

36. La parte demandada no ha pagado por mantenimiento o reparaciones de la propiedad inmueble localizada en la Urbanización Sierra Berdecía desde septiembre 2024.

37. La parte demandante ha pagado todos los gastos del inmueble desde el divorcio en agosto de 2024.

38. Los gastos del inmueble pagados por la demandante desde agosto de 2024 hasta octubre de 2025 ascienden a $5,636.12.

39. Los pagos fueron por concepto de limpieza, gas, jardinería, mantenimiento al tratamiento de

techo Danosa, fumigador, mantenimiento de aires acondicionados y servicio por reparaciones de plomería.

40. La propiedad inmueble localizada en la Urbanización Sierra Berdecía tiene placas solares.

41. Las placas solares están bajo préstamo en la Coopertativa (sic) Caribe Coop.

42. El pago mensual por las placas solares es de $315.84.

43. Al momento del divorcio en agosto 2024 el préstamo de las placas solares tenía un balance de cancelación de $7,483.55.

44. Desde el divorcio la parte demandante ha pagado el préstamo de las placas solares.

45. Desde agosto de 2024 hasta octubre de 2025 la parte demandante ha pagado un total en intereses por las placas solares de $142.07.

46. Las placas solares requieren de servicio de mantenimiento.

47. Que desde el divorcio en agosto de 2024 hasta octubre de 2025 la demandante ha pagado por dos mantenimientos de las placas solares.

48. Por los dos mantenimientos a las placas solares la parte demandante pagó el total de $594.00.

49. La propiedad inmueble localizada en la Urbanización Sierra Berdecía está asegurada.

50. El seguro del inmueble ha sido pagado a plazos por la demandante.

51. El costo de la póliza por el inmueble y auto Honda Pilot 2021 es de $2,291.38 anual.

52. El seguro de auto y propiedad es con la Aseguradora MAPFRE.

53. El pago por el seguro de auto y propiedad es de $234.61 mensuales por 8 meses.

54. La deuda por el seguro es ganancial.

55. La parte demandante ha pagado intereses por el seguro de auto y propiedad hasta el presente ascendente a un total de $78.19.

56. Para la obtención de la póliza la parte demandante pagó un pronto de $414.45.

57. La demandante mantiene en su posesión un vehículo de motor marca Honda Pilot del año 2021.

58. El vehículo de motor Honda Pilot 2021 es ganancial.

59. Contra el vehículo de motor Honda Pilot 2021 tiene deuda.

60. La deuda por el vehículo de motor Honda Pilot 2021 es ganancial.

61. El balance de cancelación al momento de divorcio en agosto 2024 por la Honda Pilot 2021 era de $18,099.71.

62. Desde el momento del divorcio en agosto de 2024 hasta el presente la demandante ha pagado el préstamo de auto de la Honda Pilot 2021.

63. El pago mensual por la Honda Pilot 2021 es de $617.22[.]

64. Desde el momento del divorcio en agosto de 2024 hasta el presente la demandante ha pagado en intereses por el préstamo de la Honda Pilot 2021 ascendente a un total de $662.60.

65. La parte demandante ha costeado todos los mantenimientos del vehículo de motor Honda Pilot 2021.

66. Desde el momento del divorcio en agosto de 2024 hasta el presente la demandante ha pagado por el mantenimiento del vehículo de motor Honda Pilot 2021 el total de $4,874.98.

67. Las partes mientras estuvieron casados obtuvieron un "time share" con la compañía Royal Holiday.

68. El "time share" es ganancial y tiene deuda.

69. La deuda del "time share" consiste en una anualidad más un pago mensual.

70. El pago mensual por el time share es de $182.31.

71. El pago anual por el time share es de $902.00.

72. Desde el momento de divorcio la parte demandante ha estado pagando el time share.

73. Desde el momento del divorcio la parte demandante ha realizado un pago anual por concepto del time share de $902.00.

74. Al momento del divorcio en agosto de 2024 el balance de cancelación del time share era de $2,663.09.

75. Desde el momento del divorcio en agosto 2024 hasta octubre de 2025 la parte demandante ha pagado por concepto de intereses por el time share un total de $115.80.

76. Los bienes mueble gananciales fueron inventariados por las partes.

77. De los bienes muebles inventariados, la parte demandante se quedó con los siguientes: (1.) Lavadora y secadora Samsung; (2.) Mesa con tope de granito negro y madera; (3.) Cuatro Lámparas; (4.) Centro de mesa; (5.) Centro de entretenimiento; (6.) Muebles sofá y love seat; (7.) Nevera Maytag; (8.) Estufa LG; (9.) Microondas Samsung; (10.) Juego de comedor cuadrado de ocho sillas; (11.) Dos sofás Koper Furniture; (12.) Dos mesas de noche; (13.) Prendas y tres relojes; (14.) Dos cuadros de paisajes; (15.) Espejo; (16.) Gavetero Koper doble con espejo; (17.) Chest grande de cinco gavetas; (18.) Cama King; (19.) Televisor 3D Samsung 42"; (20.) Coqueta con luces y espejos; (21.) Una computadora dañada; (22.) Un escritorio; (23.) Un archivo; (24.) Honda Pilot 2021; (25.) Parte de la vajilla Mikasa y (26.) Parte del juego de ollas Lifetime.

78. De los bienes mubles inventariados, la parte demandada se quedó con los siguientes: (1.) Sartén eléctrico y accesorios Lifetime; (2.) Un escritorio; (3.) Una computadora; (4.) Guagua Honda Pilot 2012; (5.) Guagua Ford F150 1984; (6.) Motora Yamaha Vstar 2009; (7.) Juego de terraza; (8.) BRIM Espresso Maker – Cafetera; (9.) Cuchillos Cutco; (10.) Blower del patio; (11.) Trimmer; (12.) Un Hitachi; (13.) Herramientas; (14.) Rifle AK47; (15.) Pistola Glock; (16.) Rifle Musing Nagan; (17.) Motora Yamaha Vstar 2009; (18.) Ford F-150 1984; (19.) Máquina lavar a presión Black Max, 3000 PSI; (20.) Una Sierras de cadena; (21.) Envases de gasolina; (22.) Pulidora; (23.) Cargador de batería de automóvil; (24.) Neverita de playa Igloo; (25.) BBQ; (26.) Bicicleta Swing; (27.) Calentador de línea Marey; (28.) Nueve Cajas plásticas (29.) Hand Truck; (30.) Adorno de metal de pared; (31.) Prendas y relojes.

79. Además, la parte demandada se quedó con los siguientes bienes muebles gananciales: (1.) un trimmer Hitachi adicional, (2.) un revolver magnum 45, (3.) 2 guitarras tipo española, (4.) equipo de sonido, (5.) un cuatro, (6.) una sierra de cadena adicional, (7.) 3 envases de gasolina, (8.) una caja grande de herramientas, (9.) Cuadro Botero serigrafia pequeña (10.) parte de la vajilla Mikasa.

80.  Los bienes muebles inventariados no son nuevos.

81.  Los bienes muebles gananciales que fueron inventariados tienen años de uso.

82.  Los bienes muebles gananciales que fueron inventariados por las partes totalizan la suma de $69,790.93.

83.  Se estipuló el valor de los siguientes muebles inventariados fue estipulados: (1.) Lavadora y secadora Samsung $700.00; (2.) Mesa con tope de granito negro y madera $300.00; (3.) Cuatro Lámparas $50.00; (4.) Centro de mesa $0.00; (5.) Muebles sofá y love seat $700.00; (6.) Nevera Maytag, Estufa LG y Microondas Samsung por los tres $900.00; (7.) Dos mesas de noche $50.00; (8.) Prendas y tres relojes $15,000.00; (9.) Gavetero Koper doble con espejo, Chest grande de cinco gavetas, Cama King y Televisor 3D Samsung 42" por los cuatro $2,200.00 (10.) Un archivo $50.00, (11) Parte del juego de ollas Lifetime $400.00; (12) Sartén eléctrico y accesorios Lifetime $400.00; (13.) Un escritorio y Una computadora por ambos $1,000.00; (14.) Juego de terraza $2,300.00; (15.) BRIM Espresso Maker – Cafetera $400.00; (16.) Máquina lavar a presión Black Max, 3000 PSI $500.00; (17.) Tres Envases de gasolina $60.00; (18.) Pulidora $200.00; (19.) Cargador de batería de automóvil; $100.00 (20.) Neverita de playa Igloo $60.00; (21.) Bicicleta Swing $125.00; (22.) Calentador de línea Marey $250.00; (23.) Nueve Cajas plásticas $90.00 (24.) Hand Truck $130.00; (25.) Adorno de metal de pared $60.00; y (26.) Prendas y relojes $15,000.00.

84.  El valor de cada uno de los bienes muebles gananciales que fueron inventariados que se adjudica la parte demandante son: (1.) Lavadora y secadora Samsung $700.00; (2.) Mesa con tope de granito negro y madera $300.00; (3.) Cuatro Lámparas $50.00; (4.) Centro de mesa $0.00; (5.) Centro de entretenimiento $0.00; (6.) Muebles sofá y love seat $700.00; (7.) Nevera Maytag, (8.) Estufa LG y (9.) Microondas Samsung por los tres $900.00; (10.) Juego de comedor cuadrado de ocho sillas $400.00; (11.) Dos sofás Koper Furniture 1,500.00; (12.) Dos mesas de noche $50.00; (13.) Prendas y tres relojes $15,000.00; (14.) Dos cuadros de paisajes $0.00; (15.) Espejo $0.00; (16.) Gavetero Koper doble con espejo, (17.) Chest grande de cinco gavetas, (18.) Cama King y (19.) Televisor 3D Samsung 42" por los cuatro $2,200.00 (20.) Coqueta con luces y espejos $0.00; (21.) Una computadora dañada $0.00; (22.) Un escritorio $50.00; (23.) Un archivo $50.00; (24.) Honda Pilot 2021 con préstamo $0.00; (25.) Parte de la vajilla Mikasa $0.00 y (26.) Parte del juego de ollas Lifetime $400.00.

85. El valor de cada uno de los bienes muebles gananciales que fueron inventariados que se adjudica la parte demandada son: (1.) Sartén eléctrico y accesorios Lifetime $400.00; (2.) Un escritorio y (3.) Una computadora ambos por $1,000.00; (4.) Guagua Honda Pilot 2012 $12,000.00; (5.) Guagua Ford F150 1984 $1,500.00; (6.) Motora Yamaha Vstar 2009 $4,000.00; (7.) Juego de terraza $2,300.00; (8.) BRIM Espresso Maker – Cafetera $400.00; (9.) Cuchillos Cutco $550.00; (10.) Blower del patio $500.00; (11.) Dos Trimmer Hitachi $1,000.00 (12.) Herramientas $2,000.00; (13.) Rifle AK47 $640.93; (14.) Pistola Glock $500.00; (15.) Revolver Magnum 45 $200.00, (16.) Rifle Musing Nagan $125.00; (17.) Máquina lavar a presión Black Max, 3000 PSI $500.00; (18.) Dos Sierras de cadena $700.00; (19.) Tres Envases de gasolina $60.00; (20) Cuadro Botero serigrafia pequeña $700.00. (21.) Pulidora $200.00; (22.) Cargador de batería de automóvil; $100.00 (23.) Neverita de playa Igloo $60.00; (24.) BBQ $150.00; (25.) Bicicleta Swing $125.00; (26.) Calentador de línea Marey $250.00; (27.) Nueve Cajas plásticas $90.00 (28.) Hand Truck $130.00; (29.) Adorno de metal de pared $60.00; (30.) Prendas y relojes $15,000.00; (31.) 2 guitarras tipo española $1,000.00, (32.) equipo de sonido $500.00, (33.) un cuatro $350.00, y (34.) una caja grande de herramientas $400.00 y (35.) parte de la vajilla Mikasa $0.00.

86. De los bienes muebles gananciales inventariados por las partes, el valor total atribuido a la parte demandante es $22,300.00.

87. De los bienes muebles gananciales inventariados por las partes, el valor total atribuido a la parte demandada es $47,490.93.

88. De los bienes muebles inventariados la parte demandante obtuvo -$12,595.46 de diferencia.

89. De las deudas inventariadas, la parte demandante desde septiembre de 2024 se ha mantenido pagando en su totalidad las siguientes: (1.) Préstamo de auto Honda Pilot 2021; (2.) Time Share Royal Holiday; (3.) Seguro de la propiedad inmueble y auto; (4.) CRIM de la propiedad inmueble de Sierra Berdecía y (5.) Préstamo de placas solares.

90. Existe una tarjeta de crédito ganancial del banco PenFed que se mantiene abierta por el demandado.

91. El demandado ha utilizado la tarjeta para uso privativo.

92. El balance a octubre de 2025 de la tarjeta PenFed es de $4,063.00.

93. La tarjeta de crédito de PenFed está a nombre de las partes.

94. El demandado es quien utiliza exclusivamente la tarjeta de crédito PenFed.

95. La tarjeta de crédito de PenFed está bajo la custodia y uso del demandado.

96. La tarjeta de crédito de PenFed se tomó bajo el crédito de la parte demandante.

97. La tarjeta de crédito PenFed reporta su historial al informe de crédito de la parte demandante.

98. El puntaje de crédito de la parte demandante se ha visto afectado por el balance que mantiene el demandado en la tarjeta de crédito de PenFed.

99. El demandado aceptó cerrar la tarjeta de crédito PenFed si se le ordena hacerlo.

100. Existe una cuenta de ahorros de Pen Fed que permanece abierta por el demandado y cuyo balance es de quince centavos ($0.15).

101. El total por los balances de cancelación de las deudas asumidas por la parte demandante asciende a la suma de $30,917.70.

102. Con dinero ganancial y antes de disuelto el vínculo matrimonial, la parte demandada utilizó $1,000.00 para separar la propiedad donde reside en la Calle Amapola #292, Aguas Claras, Ceiba, Puerto Rico.

103. El demandado utilizó dinero ganancial para la compra de bienes muebles privativos de éste.

104. Para uso privativo y su único beneficio el demandado compró los siguientes bienes muebles: (1.) Televisor 65" nuevo; (2.) Mattress y Box Spring nuevo; (3.) Nevera nueva; (4.) Abanico nuevo; (5.) Estufa nueva.

105. La compra del demandado por los bienes muebles nuevos comprados para uso privativo no fueron consultados con la parte demandante.

106. El valor de cada uno de los bienes muebles privativos comprados por el demandado y que se encuentran bajo su posesión son: (1.) Televisor 65" nuevo $1,000.00; 2.) Mattress y Box Spring nuevo $800.00; (3.) Nevera nueva $800.00; (4.) Abanico nuevo $100.00; (5.) Estufa nueva $800.00.

107. El valor de cada uno de los bienes muebles privativos comprados por el demandado y que se encuentran bajo su posesión fue estipulado por las partes.

108. El valor total por los bienes muebles privativos comprados por el demandado y que se encuentran bajo su posesión y uso exclusivo es $3,500.00.

109. Por la mudanza del demandado la parte demandante tuvo que pagar $300.00 a David Figueroa.

110. Por el cierre de cuenta de teléfono y saldo de deuda del celular la parte demandante pagó $75.00.

111. La parte demandada antes del divorcio colocó en venta una casa con participación ganancial localizada en Santurce.

112. La parte demandada colocó la propiedad en venta por $135,000.00.

113. La tasación de la propiedad inmueble de Santurce fue por $145,000.00[.]

114. La compraventa del inmueble de Santurce resultó en una pérdida de $10,000.00.

115. La participación ganancial inscrita en el inmueble de Santurce era de 50%.

116. La pérdida en el haber ganancial por la venta del demandado de la propiedad de Santurce es de $5,000.00[.]

117. El cierre por la propiedad inmueble de Santurce se realizó luego del divorcio.

De igual manera, resolvió lo siguiente:

Por todo lo cual, este Tribunal declara HA LUGAR la Demanda presentada y en su consecuencia, se declara liquidada y extinta la sociedad de bienes gananciales y su posterior comunidad de bienes postganancial habida entre las partes.

Se le ordena a la **Sra. Lourdes Iris Pérez Carrión** al pago de **$58,914.23** al demandado Sr. Nelson Morales Santana por la liquidación de la comunidad postganancial y en virtud de dicho pago se le adjudica a la demandante en su totalidad el inmueble localizado en la Urbanización Sierra Berdecía en Guaynabo y cuya descripción registral obra en la tasación como sigue:

"URBANA: Solar radicado en la URBANIZACION VILLA SIERRA BERDECIA, situada en los barrios Santa Rosa y Camarones de Guaynabo, Puerto Rico, que se describe en el Plano de Inscripción de la Urbanización de la manera siguiente:--------

---Número veintiocho (28) de la Manzana "H", con área de cuatrocientos diecisiete metros cuadrados con trece centímetros (417.13 m/c). En lindes, por el NORTE, con el solar número treinta y cinco (35), en una distancia de trece metros cincuenta centímetros (13.50); por el SUR, con la calle Número Once (11), en una distancia de trece metros con setenta centímetros (13.70), por el ESTE, con el solar número veintisiete (27), en una distancia de treinta metros con cinco centímetros (30.05); y por el OESTE, con el solar número veintinueve (29), en una distancia de treinta y dos metros con veinticinco centímetros (32.25). Sobre dicho solar enclava una casa diseñada para una sola familia. --------------------

---Es segregación de la fina número once mil quinientos veinte (11,520), INSCRITA AL FOLIO VEINTIOCHO (28) DEL TOMO CIENTO OCHENTA Y TRES (183) de Guaynabo.------------------------ Consta inscrita al folio ciento ochenta (180) del tomo cuatrocientos uno (401), finca dieciocho mil ochocientos cuarenta y ocho (18,848) Registro de la Propiedad de Guaynabo.------------------------

---Catastro Número uno uno cuatro - cero seis dos - siete ocho cinco - cinco seis - cero cero cero (114-062-785-56-000).-----------------------------

Inconforme, el 5 de diciembre de 2025 la parte apelante presentó *Moción en Solicitud de Reconsideración de Sentencia.*

Por otro lado, el 19 de diciembre de 2025, la parte apelada presentó *Moción en Oposición a Reconsideración y en Cumplimiento de Orden.*

Mediante *Orden* emitida el 23 de diciembre de 2025, el Tribunal de Primera Instancia declaró No ha lugar a la *Moción en Solicitud de Reconsideración de Sentencia* presentada por la parte apelante.

Aún en desacuerdo, la parte apelante acudió ante este foro revisor y esgrimió los siguientes señalamientos de error:

**Primero:** "Erró el Honorable Tribunal de Primera Instancia al evaluar incorrectamente la Prueba desfilada y computar los débitos y créditos de la parte apelante y determinar que los activos de la comunidad

ascienden al total de $235,000.00 compuesto por un inmueble y los pasivos de la comunidad post ganancial totalizan $78,167.63", conforme a la Prueba desfilada.

**Segundo:** Erró el Honorable Tribunal de Primera Instancia al entrar a dirimir y adjudicar una liquidación hechas por las partes con anterioridad al caso, contrario a su orden espec[í]fica de que no iba a ser considerado en la conferencia del Informe con Antelación a Juicio.

**Tercero:** Erró el Honorable Tribunal de Primera Instancia al no adjudicarle valores a ciertas propiedades que fueron retenidas y/o adjudicadas a la parte Apelada.

El 15 de mayo de 2026, la parte apelante presentó *Alegato Supletorio.*

Por otro lado, el 13 de junio de 2026, la parte apelada presentó *Alegato en Oposición.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. Deferencia Judicial

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos. *Argüello v. Argüello,* 155 DPR 62 (2001); *Hernández Maldonado v. Taco Maker,* 181 DPR 281 (2011); *SLG Rivera Carrasquillo v. AAA,* 117 DPR 345, 356 (2009); *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 779 (2022). Además, que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical. *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021). Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Santiago Ortiz v. Real Legacy et al.,* supra, pág. 219; *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 142 (2013).

Sin embargo, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha

reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356; *Ortiz Ortiz v. Medtronic*, supra, pág. 778.[1]

No obstante, "[l]a tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Empero, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013)[2]. Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435. Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *Íd.* citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997).

## B. Sociedad Legal de Gananciales

Nuestro ordenamiento jurídico estableció que, aquellas personas que se unan en matrimonio, podrán escoger, mediante capitulaciones matrimoniales, el régimen económico que regirá durante este. Sin embargo, ante la falta de capitulaciones

---

[1] Véase también *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013).
[2] Véase, además, *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Umpierre Matos v. Juelle, Mejía*, 203 DPR 254, 275 (2019), citando a *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

matrimoniales, se entenderá que el matrimonio se contrajo bajo el régimen de Sociedad Legal de Gananciales. *Matos Rivera v. Soler Ortiz*, 213 DPR 1044, 1054 (2024). Este régimen matrimonial reconoce la titularidad conjunta y sin especial atribución de cuotas de todos los bienes del matrimonio durante su vigencia. *Íd.* pág. 1054; *Díaz Rodríguez v. Garcia Neris*, 208 DPR 706, 716 (2022); *Rosselló Puig v. Rodríguez Cruz*, 183 DPR 81, 93 (2011). La sociedad de bienes gananciales se encuentra reglamentada por el Capítulo IV de nuestro Código Civil.

La existencia del régimen de la Sociedad Legal de Bienes Gananciales implica que los cónyuges son condueños y coadministradores de la totalidad del patrimonio matrimonial, por lo que ostentan la titularidad conjunta de éste sin distinción de cuotas. *Montalván v. Rodríguez*, 161 DPR 411, 420 (2004); *Rivera Lamberty v. Rodríguez Amador*, 205 DPR 194, 204 (2020); Véase Art. 507 del Código Civil, 31 LPRA sec. 6951. Se presumen gananciales los bienes del matrimonio en la medida en que no se pruebe que pertenecen privativamente a cualquiera de los cónyuges. Art. 519 del Código Civil, 31 LPRA sec. 6971.

Cuando se contrae matrimonio bajo dicho régimen, las obligaciones siguientes, entre otras, estarán a cargo de la sociedad: "(1) toda deuda u obligación contraída por cualquiera de los cónyuges durante el matrimonio, (2) las reparaciones mayores o menores de los bienes gananciales, y (3) los préstamos personales en los que incurra cualquiera de los cónyuges". *Matos Rivera v. Soler Ortiz*, supra, pág. 1055.

Cuando se disuelve el matrimonio al amparo de este régimen, entre los cónyuges surge una comunidad ordinaria compuesta por todos los bienes que eran gananciales, y en los que ambos participan por partes iguales mediante cuotas independientes, alienables y homogéneas. *Íd.* La comunidad posganancial, se encontrará

gobernada por las normas dispuestas en el Código Civil referentes a la comunidad de bienes. Ambos cónyuges podrán administrar la comunidad, así como solicitar su división, ya que ninguno se encuentra obligado a permanecer en comunidad. *Íd.* En las instancias en que uno de los excónyuges solicite la división, se liquidan todos los bienes que pertenecían a la Sociedad Legal de Gananciales y deja de existir la comunidad posganancial.

### C. *Comunidad de Bienes*

La comunidad de bienes existe cuando una cosa o un derecho pertenecen en común proindiviso a dos o más personas. al Art. 835 del Código Civil de 2020, 31 LPRA sec. 8191; *Matos Rivera v. Soler Ortiz*, supra, pág. 1056. La participación de los comuneros, tanto en los beneficios como en las cargas será proporcionado a sus respectivas cuotas.  Las cuotas se presumirán iguales mientras no se pruebe lo contrario. Arts. 837 y 838 del Código Civil de 2020, 31 LPRA secs. 8193-8194. A falta de un contrato o unas disposiciones especiales, la comunidad deberá regirse de manera supletoria por las disposiciones del Código Civil aplicables a la comunidad de bienes. Art. 836 del Código Civil de 2020, 30 LPRA sec. 8192.

Ha sido dispuesto que, el comunero tiene derecho a usar y a disfrutar las cosas comunes siempre que disponga de ella conforme con su destino y de manera que no perjudique el interés de la comunidad, ni impida a los comuneros utilizarlas según su derecho. Art. 839 del Código Civil de 2020, 30 LPRA sec. 8192. Es decir, mientras dure la comunidad posganancial, cada excónyuge podrá utilizar la cosa en común, aunque ninguno podrá tener el control total sobre sus bienes. *Matos Rivera v. Soler Ortiz*, supra, pág. 1057.

Cabe señalar que, el comunero está impedido de utilizar la cosa común para su particular y exclusivo beneficio, sin pagar una compensación adecuada a la comunidad. Esto, porque el uso exclusivo del bien común por uno solo de los comuneros, es

contrario a los principios elementales del derecho, basados en equidad, que no permiten enriquecimiento injusto. *Íd.*

No obstante, el nuestro Máximo Foro ha expresado que, el uso exclusivo del bien por uno solo de los comuneros no siempre conllevará el pago de una compensación a los demás. El hecho de que solo uno de los comuneros utilice la cosa común, no conlleva por sí solo ese uso en ilícito. Pues, no se puede descartar la posibilidad de que existiera un consentimiento expreso o tácito, o que los comuneros llegaran a un acuerdo sobre el uso del bien. *Íd.* pág. 1058.

En cuanto al proceso de división de la comunidad, este consiste en tres operaciones principales, a saber: 1) inventario y avalúo; 2) liquidación, y 3) división y adjudicación. *Íd.* pág. 1059.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a resolver.

**III**

En su primer señalamiento de error, la parte apelante sostiene que, el foro primario incidió al evaluar incorrectamente la prueba desfilada, computar los débitos y créditos de la parte apelante, y determinar que los activos de la comunidad ascienden al total de $235,000.00 compuestos por un inmueble y los pasivos de la comunidad post ganancial totalizan $78,167.63.

Como segundo señalamiento de error, la parte apelante aduce que, el Tribunal de Primera Instancia erró al entrar a dirimir y adjudicar una liquidación hecha por las partes previo al caso de epígrafe, contrario a su orden específica de que no iba a ser considerado en la conferencia del Informe con Antelación a Juicio.

En el tercer señalamiento de error, la parte apelante arguye que, el foro apelado incidió al no adjudicarle valores a ciertas propiedades que fueron retenidas y/o adjudicadas a la parte apelada.

Por encontrarse intrínsecamente relacionados, discutiremos los señalamientos de error de forma conjunta.

Adelantamos que, no le asiste la razón. Veamos.

Según se desprende del expediente, la parte apelada presentó una *Demanda* sobre liquidación de comunidad de bienes posganancial contra la parte apelante. Luego de varias incidencias procesales, el Tribunal de Primera Instancia emitió la *Sentencia* cuya revisión nos atiene. Mediante la aludida *Sentencia*, el foro apelado determinó que los activos de la comunidad ascienden al total de $235,000.00, compuesto por un inmueble. Mientras que los activos pasivos de la comunidad posganancial totalizan $78,167.63, compuesto por deudas, gastos, pérdidas y todos aquellos gastos y pagos que son de cargo a la sociedad. Señaló que, a la parte apelada le correspondían unos créditos ascendentes a $19,501.96, que incluyen gastos adicionales realizados por esta y por el uso de la parte apelante de fondos comunes para adquirir bienes privativos que mantiene para sí. Indicó que, luego de debitados los pasivos a los activos surgía un sobrante de $156,832.37 a dividirse entre los cónyuges, para un total de $78,416.18, cada uno. No obstante, señaló que, dado a que la parte apelada tenía un crédito adicional a su favor, ascendente a $19,501.96, la parte apelante tenía derecho a recibir el pago de $58,914.23 por la liquidación de la comunidad.

De acuerdo al derecho reseñado, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos.[3] Pues, de ordinario, el juzgador de instancia se encuentra en mejor posición para aquilatar la prueba testifical.[4]

---

[3] *Ortiz Ortiz v. Medtronic*, supra, pág. 779.
[4] *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219.

No obstante, los tribunales apelativos no debemos intervenir con las determinaciones del tribunal sentenciador, salvo medie pasión, prejuicio, parcialidad o error manifiesto.[5]

Los días 28 al 30 de octubre de 2025, el Tribunal de Primera Instancia celebró el juicio en su fondo del caso de epígrafe. En el juicio, la parte apelada presentó prueba documental y testimonial. En específico, presentó su testimonio, el testimonio del ingeniero Ramón Amaury Mota, del tasador Jimmy Rivera Rubio, y del señor David Figueroa. En cuanto a la prueba documental, presentó una tabla con el listado del inventario de los bienes y créditos reclamados, entre otros documentos.

La parte apelante también presentó prueba testimonial y documental. La prueba testifical que se limitó al testimonio del señor Morales Santana. Respecto a la prueba documental, la parte apelante presentó cuatro recibos de compra de cuatro armas de fuego, fotografías de herramientas, de caja de herramientas y de cinco guitarras.

El Tribunal de Primera Instancia tuvo la oportunidad de evaluar no solo la prueba documental presentada por las partes, sino también, su testimonio. A base de dicha evaluación, determinó adjudicar los bienes de la forma antes reseñada.

Al examinar la prueba ante nuestra consideración, no surge de forma alguna que, la parte apelante hubiese rebatido la decisión del foro apelado. La parte apelante se limitó a presentar unos recibos y fotos de ciertos bienes, mas no presentó prueba documental que apoyara su reclamación. Cabe destacar que, como bien menciona la parte apelada, la tabla presentada por la parte apelante junto a su recurso, no fue presentada ante el Tribunal de Primera Instancia. Es decir, el foro apelado no tuvo la oportunidad de evaluar dicha

---

[5] *Íd.*; *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356; *Ortiz Ortiz v. Medtronic*, supra, pág. 778.

tabla. Por lo que, no nos corresponde realizar una evaluación sobre esta.

Luego de una minuciosa evaluación de la totalidad de la prueba presentada que surge del expediente, determinamos que no quedó demostrado que el foro primario haya actuado mediando error manifiesto, pasión, prejuicio o parcialidad al evaluar a los testigos y la prueba que tuvo ante sí.

**IV**

Por los fundamentos expuestos, se *confirma* la Sentencia apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones